UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WADE GISCLAIR                              CIVIL ACTION

VERSUS                                     NO. 05-5223

GALLIANO MARINE SERVICE, ET AL.            SECTION R(5)

**ORDER AND REASONS**

Before the Court are two motions for summary judgment by defendant Sealand Mechanical. For the following reasons, the Court GRANTS the motions.

**I. BACKGROUND**

This case arises out of an incident that occurred in December 2004 aboard two vessels in Port Fourchon, Louisiana. At the time, the vessel C-MARLIN was docked next to the vessel EASTERN SPIRIT. The EASTERN SPIRIT was owned by defendant Edison Chouest Offshore International (ECOI), and the C-MARLIN was owned by defendant Alpha Marine Services International (AMSI). Plaintiff Wade Gisclair, the captain of the C-MARLIN, was employed by Galliano Marine Service.

In late December 2004, the freezer aboard the EASTERN SPIRIT began to malfunction. Defendant Sealand Mechanical attempted to fix the broken freezer but was unsuccessful. On December 24, 2004, the temperature in the freezer aboard the EASTERN SPIRIT began to rise. As a result, the crews of the two vessels were forced to transfer all of the items that were in the EASTERN SPIRIT's freezer to the C-MARLIN's freezer. While transferring these items, Gisclair alleges that he injured his lower back.

On November 1, 2005, Gisclair sued Galliano Marine, Alpha Marine Services (AMS), and Sealand. Gisclair eventually added ECOI and AMSI as defendants, and the Court dismissed Galliano and AMS for failure to prosecute. ECOI and AMSI cross-claimed against Sealand, seeking defense and indemnity under the Master Access Agreement between Edison Chouest Offshore, a company related to ECOI and AMSI, and Sealand. Sealand now moves for summary judgment dismissing Gisclair's claims against it, arguing that there is no evidence that Sealand was negligent in repairing the freezer or that Gisclair's injury was a foreseeable consequence thereof. Sealand also moves for summary judgment dismissing the cross-claim by ECOI and AMSI.

**II. SUMMARY JUDGMENT**

    **A. Legal Standard**

Summary judgment is appropriate only when the pleadings and

summary judgment evidence establish that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party has the burden of showing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

### B. Sealand's First Motion

Sealand first seeks summary judgment dismissing Gisclair's claims against it. Sealand argues that the evidence is insufficient to sustain a finding that it was negligent, and that the harm to Gisclair was not a foreseeable consequence of any negligence Sealand may have committed.

Gisclair's claims against Sealand fall under the general maritime law. The Fifth Circuit has held that "general principles of negligence law" apply in maritime tort cases. *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980). A maritime "tortfeasor is accountable only to those to whom a duty is owed." *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987) (citations omitted). This duty is circumscribed by the doctrine of foreseeability: the duty "may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct, and not to other interests even of the same plaintiff which may in fact happen to be injured." *Id.* (quoting Harper, James & Gray, *The Law of Torts, Scope of Duty in Negligence Cases* § 18.2 at 655 (2d ed. 1986)).

In *Consolidated Aluminum*, the Fifth Circuit articulated its standard of foreseeability applicable in maritime cases:

> We perceive a harm to be the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human

4

intervention.

*Consolidated Aluminum*, 833 F.2d at 68. In that case, the defendant C.F. Bean Corp. negligently struck a natural gas pipeline while dredging. *Id.* at 66. The resulting rupture caused the owner of the pipeline to shut off the flow of gas in the pipeline, cutting off gas to Consolidated Aluminum's nearby plant. Contrary to industry practice, the natural gas pipeline was Consolidated's only source of energy. The shut-down caused significant physical damage to the plant and to work-in-progress, and also caused economic loss. *Id.* The Fifth Circuit held that C.F. Bean was not liable to Consolidated because "Bean could [not] have anticipated that its failure to follow safe dredging practices would likely result in physical damage to the equipment and work-in-progress at Consolidated's aluminum reduction plant several miles away." *Id.* at 68. The Court noted that "[i]njury to property and persons from the escaping gas, or from a fire which might have ensued, would be examples of consequences that would be foreseeable." *Id.* But the connection between the negligent dredging and Consolidated's injury was too attenuated to meet the foreseeability requirement.

In this case, the connection between the repair of the freezer aboard the EASTERN SPIRIT and Gisclair's injury is too attenuated to have been foreseeable. Applying the standard used by the Fifth Circuit in *Consolidated Aluminum*, Sealand could not

5

have anticipated that its alleged failure to repair the freezer properly would likely result in Gisclair injuring his back while carrying groceries between the EASTERN SPIRIT and the C-MARLIN. Sealand might have anticipated that food would spoil or that the freezer would leak. Sealand might even have anticipated that the crew of the EASTERN SPIRIT would have to transfer the groceries or otherwise act to prevent their spoilage. But Sealand could not have anticipated that the captain of an adjacent vessel would be asked to assist in the transfer of groceries from one vessel to another, and that during the course of that transfer, he would injure his back. Because Gisclair cannot establish that his injury was a foreseeable result of Sealand's failure to repair the freezer aboard the EASTERN SPIRIT, Sealand is entitled to summary judgment.

## B. Sealand's Second Motion

Sealand also moves for summary judgment on AMSI and ECOI's cross-claim. Sealand argues that the Master Access Agreement (MAA) between it and the cross-claimants' parent company, Edison Chouest Offshore (ECO), does not require Sealand to defend and indemnify AMSI and ECOI. Sealand further argues that the cross-claimants are not entitled to additional assured status under the MAA.

ECO and Sealand originally executed the MAA on July 9, 2003. (R. Doc. 29-5). Under the MAA, Sealand agreed to provide refrigeration services to vessels owned by ECO and its affiliated and related companies. The indemnification provision read as follows:

> [Sealand] further agrees to and will hold harmless, release, defend and indemnify [Edison Chouest and its affiliated and related companies] from and against all claims, demands, causes of action, damages and/or expenses of any nature asserted by or on behalf of any entity or person including, but not limited to, those for injury, death or property damage, which are caused by, arise out of, or are directly or indirectly related to the activities of [Sealand], its employees, invitees, contractors or subcontractors at the premises and/or aboard the vessels to which access is provided, regardless of whether such result, or allegedly result, in whole or in part, from the negligence, strict liability or other contractual or legal liability of [Edison Chouest and its affiliated and related companies] and/or the unseaworthiness of any vessels.

*Id.* By its own terms, the provision requires Sealand to provide defense and indemnity to ECO and its affiliates (including ECOI and AMSI) against claims directly or indirectly arising out of Sealand's activities aboard the EASTERN SPIRIT. The question before the Court, therefore, is whether Gisclair's claim directly or indirectly arises out of Sealand's activities aboard the EASTERN SPIRIT.

The Fifth Circuit addressed a similar "catch all" indemnification provision in *Fontenot v. Mesa Petroleum Co.*, 791

F.2d 1207, 1214-16 (5th Cir. 1986).[1] In that case, an offshore oil platform worker was injured aboard an offshore platform owned by defendant Rowandrill when he slipped while exiting a helicopter during a refueling stop on his way to another platform. *Id.* at 1210-11. The worker, Fontenot, was employed by a subcontractor of Mesa, the operator of the two platforms. *Id.* Rowandrill, the owner of the platform, and the operator of the platforms, Mesa, cross-claimed against each other seeking contractual indemnity. *Id.* Rowandrill, sought indemnification from Mesa under the following provision:

> [Mesa] agrees to protect, defend, indemnify and save [Rowandrill] from and against all claims, demands, and causes of action of every kind an character, without limit and without regard to the cause or causes thereof or the negligence of any party, arising in connection herewith in favor of [Mesa]'s employees, [Mesa]'s contractors or their employees other than [Rowandrill's employees or its subcontractors or their employees] on account of bodily injury, death or damage to property.

*Id.* at 1213. The Fifth Circuit noted that it "broadly construed language identical or similar to the 'arising in connection herewith' language . . . to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract." Id. at 1214 (citation omitted).

---

[1] In that case, the Court of Appeals noted that the standard applicable to indemnity agreements under Louisiana law was "for most purposes substantially identical to the standard under maritime law." Id. at 1215 n.6. Although the parties have not briefed the question of which law applies, the result is the same whether under maritime or Louisiana law.

8

Whenever "the presence of the injured person at the scene of the injury is attributable to or might reasonably be anticipated by his employment responsibilities, then his injuries occur 'in connection with' those responsibilities." *Id.* at 1215. Thus, Mesa owed Rowandrill indemnity because the injury arose in connection the performance of the contract, in which Rowandrill provided a platform upon which Mesa would operate a heliport. *Id.* at 1215-16. The Court further noted that indemnification agreements in the offshore mineral production context generally function to assign liability for injuries to the injured party's employer, rather than to the negligent party. Id. at 1216. In this case, the injured party was an employee of a subcontractor of Mesa's and thus came within the general thrust of such a provision. *Id.*

In *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585 (5th Cir. 1986), the Fifth Circuit addressed another catch-all provision similar to the one at issue in this case. Oceanomics agreed to locate submerged pipes offshore and mark them with buoys for TETCO. *Id.* at 587. The parties agreed that Oceanomics fulfilled this duty under the contract. *Id.* TETCO's other subcontractors sought the advice of an Oceanomics employee on whether and where to drop a vessel's anchors near the undersea pipelines. *Id.* The subcontractor disregarded the advice of the Oceanomics employee and dropped anchor near one the pipelines,

eventually striking the pipeline and necessitating a costly replacement. *Id.* at 588-89. When the owner of the pipeline sued the subcontractors allegedly responsible for dropping the anchor, the subcontractors sought indemnity from Oceanomics, arguing that the incident occurred "in connection with, arising out of, or in any wise incident or related to [Oceanomics]'s performing services and operations under this Contract, regardless of whether caused by negligence of [TETCO], and/or Primary Contractor, and/or contractors or subcontractors of either of said parties . . . ." *Id.* at 591.

The Fifth Circuit affirmed the district court's determination that the indemnification agreement did not require Oceanomics to indemnify TETCO's subcontractors. The Court cited *Fontenot* for the principle that catch-all indemnity agreements are to be read broadly. *Id.* at 591. Nevertheless, they are not boundless. The Court stated that giving full effect to catch-all provisions "would have us read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on TETCO's pipeline." *Id.* The Court refused to read the contract language "in a vacuum to apply to any situation for which a colorable argument could be made that loss of property was somehow related to Oceanomics' services under the contract." *Id.* The Court declined "to extend the reach of an indemnity

provision beyond the intent of the parties to the agreement where the undertaking urged would create 'an unusual and surprising obligation.'" *Id.* (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). The indemnity agreement was drafted "to cover all conceivable situations in which [TETCO] might incur liability. The limit of that potential liability, however, was accidents that might occur during Oceanomics' performance of contract services." *Id.* It was implausible that TETCO would contract to require "Oceanomics to protect other subcontractors from their own negligence when that negligence was independent of the performance of Oceanomics' contract." *Id.*

In both *Fontenot* and *Marathon Pipe Line*, the Fifth Circuit was concerned with the foreseeability of the incident giving rise to the claim for indemnity. *See Fontenot*, 791 F.2d at 1214 ("all activities reasonably incident or anticipated by the principal activity of the contract"); *Marathon Pipe Line*, 806 F.2d at 591 (expressing concern that giving full effect to catch-all provisions "would have us read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on TETCO's pipeline."). In *Fontenot*, the injury aboard the platform was a direct result of Mesa's utilization of the platform for its own purposes. Further, indemnification was supported by the principle that Mesa agreed to indemnify

11

Rowandrill for injuries to Mesa employees arising out of the agreement between the parties, and Rowandrill agreed to indemnify Mesa for the converse. The obligations were designed to shift liability for an individual's injury to that person's employer, so that a broad reciprocal obligation made sense. In this case, it is implausible that Sealand agreed to indemnify ECO's affiliates for an injury sustained when a seaman hurt his back transporting groceries on a vessel different from the one on which Sealand performed freezer repairs. As the Court discussed, *supra*, such an injury is not a foreseeable result of Sealand's failure to fix the freezer. The intervening decision to move the groceries between vessels, and the manner in which to do so, so attenuates the causal chain that Gisclair's injury is not even indirectly related to Sealand's inability to repair the freezer. Interpreting the contract terms to cover this incident would be reading the "language to cover a limitless number of unforeseeable casualties." *Marathon Pipe Line*, 806 F.2d at 591.

Cross-claimants also argue that they are entitled to additional assured status under the Marine General Liability policy procured by Sealand. They argue that, although the policy excludes direct coverage for incidents of this nature, the policy covers instances in which Sealand owes a contractual indemnity obligation to a third party. Thus, cross-claimants argue that even though they are not entitled to direct coverage as

additional assureds, they are entitled to coverage by way of the contractual indemnification obligation owed to them by Sealand. As the Court has discussed, *supra*, Sealand does not owe a contractual indemnity obligation in this case. As such, cross-claimants are not entitled to additional assured protection under Sealand's Marine General Liability policy.

For the above reasons, Sealand is entitled to summary judgment as to the cross-claims by ECOI and AMSI.

**IV. CONCLUSION**

For the reasons stated above, Sealand's first motion for summary judgment is GRANTED. Sealand's second motion for summary judgment is GRANTED.

New Orleans, Louisiana, this 18th day of April, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE