UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WADE GISCLAIR                          CIVIL ACTION


VERSUS                                 NO. 05-5223


GALLIANO MARINE SERVICE, ET AL.        SECTION R(5)



## ORDER AND REASONS

Before the Court is plaintiff's motion to take judicial notice.  For the following reasons, the Court DENIES the motion.


**I.  BACKGROUND**

This case arises out of an incident that occurred in December 2004 aboard two vessels in Port Fourchon, Louisiana.  At the time, the vessel C-MARLIN was docked next to the vessel EASTERN SPIRIT.  The EASTERN SPIRIT was owned by defendant Edison Chouest Offshore International (ECOI) and the C-MARLIN was owned by defendant Alpha Marine Services International (AMSI).  Plaintiff Wade Gisclair, the captain of the C-MARLIN, was employed by Galliano Marine Service.

In late December 2004, the freezer aboard the EASTERN SPIRIT began to malfunction.  Defendant Sealand Mechanical attempted to fix the broken freezer but was unsuccessful.  On December 24, 2004, the temperature in the freezer aboard the EASTERN SPIRIT began to rise.  As a result, the crews of the two vessels were forced to transfer all of the items that were in the EASTERN SPIRIT's freezer to the C-MARLIN's freezer.  While transferring these items, Gisclair alleges that he injured his lower back.

On November 1, 2005, Gisclair sued Galliano Marine, Alpha Marine Services (AMS), and Sealand.  Gisclair eventually added ECOI and AMSI as defendants and the Court dismissed Galliano and AMS for failure to prosecute.  ECOI and AMSI cross-claimed against Sealand, seeking defense and indemnity under the Master Access Agreement between Edison Chouest Offshore, a company related to ECOI and AMSI, and Sealand.  On April 18, 2007, the Court granted Sealand's motion for summary judgment against Gisclair and against ECOI and AMSI.  As such, only Gisclair's claims against ECOI and AMSI remain.

## II.  MOTION TO TAKE JUDICIAL NOTICE

Gisclair now moves the Court to take judicial notice of facts contained in documents generated by the Kentucky Board of Medical Licensure (KBML) and the Kentucky Board of Nursing (KBN). Shortly after the incident in which his alleged injury occurred,

Gisclair sought treatment at the Family Medical Center in Columbia, Kentucky. Medical records from the center indicate that Gisclair told the individual completing his medical questionnaire that he suffered a back injury while getting out of a truck or slipping on ice. Gisclair received treatment from nurse practitioner Rockie McDaniel and Dr. Robert Shipp.

Gisclair now moves the Court to take judicial notice of stipulated facts in the *Agreed Order of Indefinite Restriction* and *Amended Agreed Order of Indefinite Restriction* issued by the KBML and signed by Dr. Shipp. (R. Docs. 77-4, 77-5, 77-6, 77-7). In the *Amended Agreed Order*, Dr. Shipp admitted to certain facts, denied any criminal wrongdoing, and consented to certain restrictions of his license for an indefinite period. *Id.* Gisclair also moves the Court to take judicial notice of stipulated facts in an *Agreed Order* issued by the KBN and signed by Nurse McDaniel. In the Agreed Order, Nurse McDaniel admitted to certain facts, denied any criminal wrongdoing, and consented to various restrictions on his nursing license. In effect, Dr. Shipp and Nurse McDaniel settled the cases against them by stipulating that they violated proper procedure in issuing prescriptions for medication and agreeing to professional sanctions. Gisclair argues that the Court should take judicial notice of the facts leading to the professional restrictions to call into question the accuracy and credibility of medical

3

records from the facility.

Federal Rule of Civil Procedure 201 allows a Court to take judicial notice of any adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(a) & (b). Whether to take judicial notice of such facts is generally within the discretion of the trial court. Fed. R. Civ. P. 201(c). When, however, a party requests that the Court take judicial notice and supplies the court with the necessary information, the court must take judicial notice. Fed. R. Civ. P. 201(d). Although there is little case law on the issue, it is generally agreed that courts may not take judicial notice of irrelevant facts and that any judicially noticed facts are subject to other exclusionary rules such as Rules 403 and 801. *See Knop v. Johnson*, 667 F.Supp. 467, 485 (W.D. Mich. 1987); *see also* 21B Wright & Graham, *Federal Practice & Procedure: Evidence* § 5104 (2d ed. 2007).

Courts generally may not take judicial notice of factual findings from other proceedings as probative of the underlying truth of the facts at issue in the other proceedings. *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). Only when the finding of fact is "the type of self-evidence truth that

4

no reasonable person could question, a truism that approaches platitude or banality," can a court take judicial notice of the underlying facts themselves. *Id.* (internal formatting altered). Otherwise, a court can take judicial notice of such documents only to prove the fact of the proceeding itself.

In this case, the evidence of which Gisclair seeks judicial notice does not meet this standard. Although Shipp and McDaniel each stipulated that Shipp would sign blank prescription forms and McDaniel would diagnose patients and issue prescriptions, each contested the factual findings of the respective boards' consultants and denied any criminal wrongdoing. (R. Docs. 77-7, 77-8). Thus, the consultants' conclusions and the boards' reliance thereon to initiate suspension or probation proceedings may not be brought to prove the underlying facts stated in the conclusions, because those facts are subject to reasonable dispute. In other words, the consultants' conclusions, which are disputed, may be judicially noticed only to establish the fact that the consultants made conclusions, but the contents of the conclusions may not be judicially noticed for proving their own truth.

Gisclair also urges the Court to take judicial notice of some facts that Dr. Shipp and Nurse McDaniel stipulated to independently of the consultants' conclusions. As to Nurse McDaniel, the stipulations are as follows:

- On November 19, 2003, the Board initiated an investigation of Mr. McDaniel due to numerous allegations received indicating that Mr. McDaniel practices outside the scope of an ARNP and illegally prescribes controlled substances.

- Mr. McDaniel acknowledges that Dr. Robert Shipp, a physician with whom he had a collaborative agreement, provided him with forty-two (42) controlled substance prescription forms that had been pre-signed to be used for patients seen by Mr. McDaniel. Mr. McDaniel acknowledges that he has used these pre-signed prescriptiosn for prescribing controlled substances for patients. Mr. McDaniel asserts that he used these prescriptions in conjunction with Dr. Shipp for patients who had established treatment plans.

- On March 2, 2005, the Board, pursuant to KRS 314.089, entered an Order of Immediate Temporary Suspension on Mr. McDaniel's Registered Nurse license and ARNP registration in order to protect the public.

- Mr. McDaniel has voluntarily surrendered his registration as an advanced registered nurse practitioner for a period of four (4) years as of

the effective date of [the] Agreed Order.

(R. Doc. 77-8; 77-3). As to Dr. Shipp, the stipulations are as follows:

- The Board received a grievance alleging that [McDaniel] had hired [Dr. Shipp] in order for [Shipp] to enter into a collaborative agreement with Mr. McDaniel. According to the grievant, this relationship resulted in Mr. McDaniel misrepresenting himself as a physician, operating outside the scope of practice of an ARNP, and illegally providing controlled substances to people. The grievant related that Mr. McDaniel owned the Family Medical Center, a Family Practice facility, at which he employed [Shipp]. The grievant alleged that [Shipp] permitted Mr. McDaniel to use [Shipp]'s DEA number to provide controlled substances to people in violated of the laws relating to ARNP prescribing.

- Following the July 28, 2004 search of the Family Medical Practice, Dr. Shipp voluntarily surrendered his DEA permit.

- Dr. Shipp confirmed that he had provided pre-signed controlled substance prescription blanks to ARNP McDaniel as "part of the buusiness."

- The license to practice medicine held by Robert Shipp, M.D., is hereby restricted for an indefinite period of time.

(R. Docs. 77-6, 77-7, 77-3).

Putting aside the issue of judicial notice, Gisclair has not demonstrated that this material is relevant or admissible for impeachment. Stipulation by a doctor and nurse to the fact that an investigation took place and that the two improperly prescribed medication does not make it more or less likely that the medical record indicating a patient's explanation for an injury is credible. Moreover, the raid by enforcement authorities on the medical clinic occurred on July 28, 2004, five months before Gisclair visited the clinic. Immediately after the raid, Dr. Shipp surrendered his DEA license. The stipulation therefore does not even address conduct that took place after the raid, including Gisclair's examination.

Further, Rule 404(b) prevents the admission of other bad acts to show the character of a person to act in conformity therewith, and the asserted material does not fall within any of the exceptions listed in the Rule. Fed. R. Evid. 404(b). In addition, Rule 608 specifically forbids the use of extrinsic evidence such as this to prove specific instances of conduct for the purpose of attacking or supporting a witness's character for truthfulness, other than proof of conviction of a crime under

Rule 609. Fed. R. Evid. 608(b). This evidence does not involve conviction of a crime. In addition, "the extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences a witness might have suffered as a result of the alleged bad act." Fed. R. Evid. 608(b) *advisory committee's note to 2003 Amendments*. Finally, this evidence is not offered to show a prior inconsistent statement, to contradict a witness's statement, or to show bias. *Id.* Accordingly, there is no admissible purpose for this evidence.

## III. CONCLUSION

For the reasons stated above, the Court DENIES plaintiff's motion to take judicial notice.

New Orleans, Louisiana, this 25th day of April, 2007.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE