UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WADE GISCLAIR                              CIVIL ACTION

VERSUS                                     NO. 05-5223

GALLIANO MARINE SERVICE, ET AL.            SECTION R(5)


**ORDER AND REASONS**

Before the Court is plaintiff's motion to take judicial notice. For the following reasons, the Court DEFERS RULING on the motion.


**I. BACKGROUND**

This case arises out of an incident that occurred in December 2004 aboard two vessels in Port Fourchon, Louisiana. At the time, the vessel C-MARLIN was docked next to the vessel EASTERN SPIRIT. The EASTERN SPIRIT was owned by defendant Edison Chouest Offshore International (ECOI) and the C-MARLIN was owned by defendant Alpha Marine Services International (AMSI). Plaintiff Wade Gisclair, the captain of the C-MARLIN, was employed by Galliano Marine Service.

In late December 2004, the freezer aboard the EASTERN SPIRIT began to malfunction. Defendant Sealand Mechanical attempted to fix the broken freezer but was unsuccessful. On December 24, 2004, the temperature in the freezer aboard the EASTERN SPIRIT began to rise. As a result, the crews of the two vessels were forced to transfer all of the items that were in the EASTERN SPIRIT's freezer to the C-MARLIN's freezer. While transferring these items, Gisclair alleges that he injured his lower back.

On November 1, 2005, Gisclair sued Galliano Marine, Alpha Marine Services (AMS), and Sealand. Gisclair eventually added ECOI and AMSI as defendants and the Court dismissed Galliano and AMS for failure to prosecute. ECOI and AMSI cross-claimed against Sealand, seeking defense and indemnity under the Master Access Agreement between Edison Chouest Offshore, a company related to ECOI and AMSI, and Sealand. On April 18, 2007, the Court granted Sealand's motion for summary judgment against Gisclair and against ECOI and AMSI. As such, only Gisclair's claims against ECOI and AMSI remain.

## II. MOTION TO TAKE JUDICIAL NOTICE

Gisclair now moves the Court to take judicial notice of data from the National Oceanographic and Atmospheric Administration documenting the weather conditions in the vicinity of Columbia,

2

Kentucky in the last two weeks of November 2004.  Gisclair asserts that the defendants plan to argue that he suffered an injury by slipping on ice on his off time in November 2004.  Gisclair asserts that the weather conditions near his home in Kentucky would therefore be relevant because they are probative of whether there could have been any ice present on which he allegedly slipped.

Federal Rule of Civil Procedure 201 allows a Court to take judicial notice of any adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Civ. P. 201(a) & (b).  Whether to take judicial notice of such facts is generally within the discretion of the trial court.  Fed. R. Civ. P. 201(c).  When, however, a party requests that the Court take judicial notice and supplies the court with the necessary information, the court must take judicial notice.  Fed. R. Civ. P. 201(d).  Although there is little case law on the issue, it is generally agreed that courts may not take judicial notice of irrelevant facts and that any judicially noticed facts are subject to other exclusionary rules such as Rules 403 and 801.  *See Knop v. Johnson*, 667 F.Supp. 467, 485 (W.D. Mich. 1987); *see also* 21B Wright & Graham, *Federal Practice & Procedure: Evidence*

§ 5104 (2d ed. 2007).

Federal courts have been willing to take judicial notice of weather conditions that are either commonly known in a jurisdiction, such as the existence of a drought, or are verifiable through resort to records kept by various entities. *See, e.g., Rio Grand Silvery Minnow v. Keys*, 469 F.Supp.2d 973, 989 n.12 (D.N.M. 2002). In this case, Gisclair urges the Court to take judicial notice of the weather conditions based on records from the Greensburg and Jametown weather stations. While the Court finds the data from the source worthy of judicial notice, it is only appropriate to take judicial notice to determine the temperatures at the two locations being reported. For any inference to be drawn from this data concerning the weather in Columbia, Kentucky, the plaintiff will have to establish the relevance of this information.[1] Plaintiff provides the Court with a map indicating the relative locations of the Gisclair residence in Columbia and the Greensburg and Jamestown weather stations, but the map gives no indication of important determinants of relevance including scale, elevation, and similarity of topography. There is no way to determine whether and to what extent the weather conditions at the Greensburg and

---

[1] Although defendants argue that the exhibits filed with plaintiff's motion are unauthenticated, the purpose of judicial notice is, in part, that resort to reliable sources can substitute for cumbersome evidentiary prerequisites such as authentication of documents.

4

Jamestown weather stations reflect the weather conditions at Gisclair's home in Columbia. Accordingly, if plaintiff lays the appropriate factual foundation for the relevance of this information, the Court will entertain a request to take judicial notice at that time.

## III. CONCLUSION

For the reasons stated above, the Court DEFERS RULING on plaintiff's motion to take judicial notice.

New Orleans, Louisiana, this __30th__ day of April, 2007.

_____*Sarah Vance*_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE